**FILED**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

FEB 2 1 2012

CLIFFORD J. PROUD
U.S. MAGISTRATE JUDGE
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

IN THE MATTER OF THE SEARCH OF )
THE ENTIRE PREMISES OF 311 LADUE )
DRIVE, MT. CARMEL, WABASH, )
COUNTY ILLINOIS, DESCRIBED AS A ) CASE NUMBER $12-M-6001-CJP$
SINGLE STORY "U" SHAPED RESIDENCE )
COVERED IN RED BRICK ON ALL SIX )
SIDES, THE RESIDENCE IS CONNECTED )
TO LADUE DRIVE BY A PAVED ) **FILED UNDER SEAL**
DRIVEWAY WITH A MAILBOX LOCATED )
ON THE EDGE OF DRIVEWAY )
)

## APPLICATION AND AFFIDAVIT
## FOR SEARCH WARRANT

I, Rusty C. Kiser being duly sworn deposes and says:

I am a Special Agent with the U.S. Treasury Department, Internal Revenue Service,

Criminal Investigation and have reason to believe that on the premises known as:

the entire premises of

**311 LADUE DRIVE, MT. CARMEL, WABASH, COUNTY ILLINOIS,
DESCRIBED AS A SINGLE STORY "U" SHAPED RESIDENCE
COVERED IN RED BRICK ON ALL SIX SIDES, THE RESIDENCE IS
CONNECTED TO LADUE DRIVE BY A PAVED DRIVEWAY WITH A
MAIL BOX LOCATED AT THE EDGE OF DRIVEWAY (See Attachment
A)**

located in within the Southern District of Illinois there is now concealed certain property,

namely:

### See the attached list entitled "Attachment B, Items to be Seized"

which constitutes evidence of the commission of a criminal offense or which is contraband, fruits

of the crime, or things otherwise criminally possessed, or which is designed or intended for use

1

or which is or has been used as the means of committing the following offenses: Title 26, United States Code, Sections 7201 (attempt to evade or defeat the assessment and payment of tax); and 7206(1) (fraud and false statements, declaration under penalties of perjury).

## FACTS SUPPORTING THIS AFFIDAVIT

1. Your affiant has been employed as a Special Agent for the U.S. Treasury Department, Internal Revenue Service, Criminal Investigation (IRS-CI) since October 2009. While employed as a Special Agent, your affiant has conducted and assisted with criminal investigations concerning violations of the Internal Revenue laws and other federal violations. Your affiant is a graduate of the Federal Law Enforcement Training Center where your affiant received classroom and practical training in criminal tax investigations and financial investigations.

2. Your affiant is currently participating in an investigation concerning the attempt to evade or defeat tax in violation of Title 26, United States Code, Sections 7201, and 7206(1), concerning **KEVIN C. WILLIAMS ("WILLIAMS")** and his work as trustee on the Spond Family Trust. Facts and circumstances contained in this affidavit are based on your affiant's personal knowledge and observations, as well as several sources of information including but not limited to public records, business records, financial records, bank account records and other federal and state agencies. Based on the information contained in this affidavit, your affiant believes that willful violations of Title 26, United States Code, Sections 7201 (attempt to evade or defeat tax); and 7206(1) (fraud and false statements, declaration under penalties of perjury) have been committed by **WILLIAMS.** Your affiant further believes that there is supporting evidence relating to the commission of these crimes at the location further identified in this affidavit.

3. The facts to support the issuance of a search warrant for the premises described above are as follows:

2

## BACKGROUND

4. Beginning on or about July 2011, this matter has been under investigation by IRS-CI. This matter was brought to the attention of IRS-CI by the civil division of IRS as a fraud referral from IRS Revenue Officer (RO) Stephanie Meents of the St. Louis, MO field office.

5. **WILLIAMS** resides at 311 La Due Drive, Mt. Carmel, Wabash County, Illinois, and he is the trustee for the Spond Family Trust. The Spond Family Trust (S.F. Trust) is owned by 94-year-old ███████ Spond.

6. Your affiant has reviewed and analyzed financial information that revealed **WILLIAMS** withdrew funds from the S.F. Trust bank account and used the funds for his own personal use and d█████████████████████████████████████████████████████████ ████████████████ Although **WILLIAMS** does receive and report a legitimate fee from the S.F. Trust for his role as trustee, █████████████████████████████████████ ████████████████████████████████████████████████████

7. In 2008, **WILLIAMS** received $195,692.72 from the S.F. Trust and o████████████ ████████████████████████████████████████████████████ ████████ In 2009, **WILLIAMS** received $121,061.31 from the S.F. Trust and o████████████ ████████████████████████████████████████████████████ ████████████ In 2010, **WILLIAMS** received $123,775.34 from the S.F. Trust and only r█████████████████████████████████████████████████████ ████████████████████████████

8. ██████████████████████████ **WILLIAMS** received the funds from the S.F. Trust by wire transfer from the S.F. Trust bank account to his personal bank accounts. **WILLIAMS** wrote several checks a month to himself from the S.F. Trust account and paid a portion of his mortgage

3

through the S.F. Trust account. **WILLIAMS** also purchased several cashier's checks from the S.F. Trust account, payable to E. Eileen Spond, which were endorsed by E. Eileen Spond and then endorsed by **WILLIAMS** and then appear to be deposited into an unknown account at First Bank.

## RESULTS OF THE INVESTIGATION

9. Based on the evidence collected and presented in this affidavit, your affiant has made the following findings and conclusions:

    a. **WILLIAMS** is a licensed Certified Public Accountant in Illinois.

    b. **WILLIAMS** was employed with the law firm Rhine Ernest LLP, but was fired in March of 2011. **WILLIAMS** was fired by Rhine Ernest LLP because his pay from the firm was being levied by the IRS and **WILLIAMS**, who was in charge of the firm's payroll, was not honoring the levy[1]. RO Stephanie Meents met with the owners of Rhine Ernest to discuss the levy on 2/25/2011 and they indicated they did not know **WILLIAMS** was not honoring the levy. **WILLIAMS** was subsequently fired.

    c. After being fired from his job at Rhine Ernest, **WILLIAMS** stated to RO Stephanie Meents on 3/17/2011 that his income will now be coming from his role as Trustee for the S.F. Trust, income tax preparation, and selling items on EBay. **WILLIAMS** also stated to RO Stephanie Meents that he will be working out of his house.

    d. In relation to the ongoing IRS civil activities, **WILLIAMS** provided some of his personal banking records to IRS RO Stephanie Meents. **WILLIAMS'** bank records indicated that

he had deposits that were not being claimed by **WILLIAMS** on his 2008, 2009 and 2010 U.S. Individual Income Tax Returns.

e. On 1/20/2011, when comparing the bank records provided by **WILLIAMS** to IRS RO Stephanie Meents with the same bank records provided directly by the bank, it was revealed that the records provided by **WILLIAMS** were altered. The source of numerous wire transfers into **WILLIAMS'** account had been "whited-out" on the records provided by **WILLIAMS**. A review of the bank records provided directly from the bank show that the "whited-out" wire transfers were from the S.F. Trust account.

f. On 10/8/2010, when IRS RO Stephanie Meents questioned **WILLIAMS** about the "whited-out" deposit items, **WILLIAMS** told IRS RO Stephanie Meents that the deposits were from EBay sales and tax preparation.

**Federal Tax Records**



10.

12

13.



**Financial Analysis**

**Bank Account Analysis**

14. Your affiant has reviewed and analyzed records of bank accounts controlled by **WILLIAMS** from Old National Bank, First National Bank, and Ally Bank.

**Summary of Bank Records**

15. According to the banking records for the S.F. Trust accounts at Old National Bank and First National Bank, the following funds were withdrawn from the S.F. Trust account and used for **WILLIAMS'** personal use:

   a. In 2008, **WILLIAMS** wrote checks to himself from the S.F. Trust bank account in the total amount of $176,463.50. **WILLIAMS** also paid his mortgage at CitiMortgage through the S.F. Trust bank account in the total amount of $19,229.22. The total amount of money **WILLIAMS** received directly or indirectly from the S.F. Trust bank account in 2008 was $195,692.72.



b. In 2009, **WILLIAMS** wrote checks to himself in the total amount of $87,594.93 and deposited $18,600 by wire transfers into his personal account. **WILLIAMS** also paid his mortgage at CitiMortgage through the S.F. Trust bank account in the total amount of $14,866.38. The total amount of money **WILLIAMS** received directly or indirectly from the S.F. Trust bank account in 2009 was $121,061.31.



c. In 2010, **WILLIAMS** wrote checks to himself in the total amount of $38,383.34 and deposited $85,392 by wire transfers into his personal account. The total amount of money **WILLIAMS** received directly or indirectly from the S.F. Trust bank account in 2010 was $123,775.34.



d. According to the bank records,         Spond transfers approximately $25,000 from her personal account into the S.F. Trust bank account every two to three months. **WILLIAMS** then depletes the account to a minimal balance.

e. From 11/15/2010 to 3/23/2011, nine checks from the S.F. Trust account were written "Pay to the order of" Old National Bank. These checks were used to purchase cashier's checks in         Spond's name. Out of the nine checks, five of them were endorsed b**y**

7

**WILLIAMS** after [ ] Spond endorsed the check. The cashier's checks appear to have been deposited into an unknown account at First Bank. Based on the bank records several other checks prior to 11/15/2010 were made out to Old National Bank in similar amounts.

**Detailed Analysis of Bank Records**

16. According to Old National Bank records, **WILLIAMS** has signature authority on one account at this financial institution:

| | Account name | Account Number | Address on Account | Date Opened |
|---|---|---|---|---|
| 1 | Spond Family Trust | ******686 | P.O. Box 1032, Mt. Carmel, IL 62863 | 02/22/2002 |

   a. According to the signature card for account number ******686, the account holder name and address is Spond Family Trust, P.O. Box 1032, Mt. Carmel, IL 62863. According to bank statements provided by Old National Bank, the account was opened on 2/22/2002 and closed on 3/24/2011.

- According to an analysis by your affiant, from 2/6/2008 through 1/24/2011, approximately $750,213.60 was deposited into account number ******686 by E. Eileen Spond. Also during that same time period approximately $171,870.83 was deposited into account number ******686 from other sources. One of the other sources appears to be from WILLIAMS in the amount of $77,545.05, of which $41,100.00 comes from a possible brokerage account in **WILLIAMS'** name.

- An initial review, by your affiant, of the expenditures from account number ******686, show that $310,269.20 worth of checks were made payable to **WILLIAMS** from 1/4/2008 through 1/31/2011. In addition, checks in the amount of $34,095.60 were made payable to CitiMortgage, in **WILLIAMS'**

8

name, from 7/11/2008 through 6/30/2009. **WILLIAMS** also transferred $57,124.84 to the possible brokerage account in **WILLIAMS'** name.

- An initial review, by your affiant, of wire transfers made from account number ******686, show that $110,903 was transferred to **WILLIAMS'** Ally Bank account from 11/12/2009 through 1/11/2011.

17. According to First National Bank records, **WILLIAMS** has signature authority on three separate accounts at this financial institution:

| | Account name | Account Number | Address on Account | Date Opened |
|---|---|---|---|---|
| 1 | Spond Family Life Insurance Trust | ****145 | PO Box 1032, Mt. Carmel, IL 62863 | 4/28/2011 |
| 2 | Bison Development LLC/Excalibur | ****787 | 311 Ladue Drive, Mt. Carmel, IL 62863 | 8/5/2009 |
| 3 | Kevin Williams | ****558 | 311 Ladue Drive, Mt. Carmel, IL 62863 | 8/24/2007 |

a. The signature card of account ****145 shows that **WILLIAMS** is the trustee with signature authority. The signature card shows an account name and address of Spond Family Life Insurance Trust / P.O. Box 1032, Mt. Carmel, IL 62863. According to the signature card and bank statements provided by First National Bank, the account was opened on 4/28/2011 and is currently still open.

- According to an analysis by your affiant, from 3/24/2011 through 6/20/2011, approximately $42,500 was deposited into account number ****145 by Spond.

- An initial review, by your affiant, of the checks drawn from account number ****145, showed that from 5/10/2011 through 6/24/2011, $1,588.60 worth of checks were made payable to **WILLIAMS**. It also showed that $9,020.11 worth of checks were made payable to Excalibur Development (**WILLIAMS'** business).

b.  The signature card of account number is ****787 shows an account name and address of Bison Development LLC, 311 Ladue Drive, Mt. Carmel, IL 62863. The signature card also shows that **WILLIAMS** is the owner of this business and he is the only individual with signature authority on account number ****787. According to bank statements and the signature card, the account was opened first under the name Bison Development, LLC on 8/5/2009 and was charged off on 2/19/2010. The account was then reopened on 12/17/2010 and the name on the account was changed to Excalibur Development, LLC[2].

- According to an analysis by your affiant, from 4/15/2011 through 7/25/2011, approximately $14,035.30 was deposited into account number ****787 from the Spond Family Life Insurance Trust Account or E. Eileen Spond's personal account at First Bank.

- An initial review, by your affiant, of checks drawn on account number ****787, show that a majority of the checks written from the account were payable to **WILLIAMS**.

c.  The signature card on account ***558 shows an account name and address of **KEVIN WILLIAMS,** 311 Ladue Drive, Mt. Carmel, IL 62863. The signature card also shows that **WILLIAMS** is the only individual with signature authority on account number ****558. According to bank statements and the signature card, the account was opened on 8/24/2007 and is still currently opened.

---

[2] Bison Development, LLC filed with the state of Illinois on 7/25/2008. The active, assumed name of Bison Development, LLC is now Excalibur Development, LLC. The agent name listed for Excalibur Development, LLC is Andrew Lincoln Williams and his listed address along with the principal office is 311 Ladue Drive, Mt. Carmel, IL 62863.

- According to an analysis by your affiant, from 10/22/2007 through 6/28/2011, approximately $340,021.35 was deposited into account number ****558 from The Spond Family Trust account at Old National Bank or First National Bank.

- An initial review, by your affiant, of the checks drawn from account number ****558, shows a majority of the checks are payable to auto companies (Plaza Motors, Expressway Ford, American Auto Centers), golf clubs and events (Victoria National, North & West Berwick, Mt. Carmel, Musselburgh Links, Ryder Cup Matches) and ▮▮▮ Spond. The checks to ▮▮▮ Spond occur every 3 months and are for $1,375.

18. According to Ally Bank records, **WILLIAMS'** name is on the following account.

| | Account Name | Account Number | Address on Account |
|---|---|---|---|
| 1 | Kevin Williams | *******031 | 311 Ladue Drive, Mt. Carmel, IL 62863 |

a. The signature card was not available for account number *******031. According to the bank statements, the name and address on the account is **KEVIN WILLIAMS,** 311 Ladue Drive, Mt. Carmel, IL 62863. According to bank statements, the account was opened prior to 12/16/2009 and is still currently open.

- According to an analysis by your affiant, from 2009 through 2011, approximately $147,234.03 was transferred into account number *******031 from the Spond Family Trust account at Old National Bank.

- An initial review, by your affiant, of the checks drawn on account number *******031, show a majority of the checks are payable to **WILLIAMS** himself, auto companies (Landmark Chevrolet, Import Auto), golf clubs (Victoria National, West Berwick) and Citimortgage. **WILLIAMS** also made several

11

checkcard purchases that appear personal in nature, including purchases made in the United Kingdom for golfing events (St. Andrews and other golf courses).

## Public Records

19. Your affiant researched and obtained property tax records maintained by the Wabash County Assessor's Office in reference to **WILLIAMS**. Your affiant was able to determine the following: According to the 2010 Wabash County Illinois property tax records for 311 Ladue Drive, Mt. Carmel, IL 62863, **WILLIAMS** is a joint owner of the property. The other joint owner of the property is **WILLIAMS'** ex-wife Teresa Williams.

## Interviews/Documents

### Mt. Carmel Post Office

20. According to the application for U.S. Post Office Box Service, box number 1032 has been owned by **WILLIAMS** since January of 2008. **WILLIAMS'** permanent address per the application list is 311 Ladue Drive, Mt. Carmel, IL 62863. According to records gathered by your affiant, P.O. Box 1032 has/is being used for the address on the bank accounts for the Spond Family Trust at Old National Bank and the Spond Family Life Insurance Trust at First National Bank.

### Tamara Mcfarland, First National Bank CFO Senior VP

21. Your affiant interviewed Mcfarland on 9/9/2011 and she provided the following information:
    a. **WILLIAMS** is the Trustee for the S. F. Trust account at First National Bank. The account is owned by Eileen Spond, an elderly lady (94 years old). The trust was set up in 1991 and the account was opened in April of 2011.

b. The funds deposited into the S.F. Trust account are personal deposits from Eileen Spond's personal account. A majority of the funds are then transferred to **WILLIAMS'** personal accounts at First National Bank and Ally Bank.

c. The S.F. Trust bank statements are being mailed to a P.O. Box 1032, Mt. Carmel, IL 62863. The bank statements for **WILLIAMS'** personal account, with address on records of 311 Ladue Drive, Mt. Carmel, IL 62863 (**WILLIAMS'** home), are emailed to **WILLIAMS**. The bank statements for Excalibur Development (**WILLIAMS'** business) are being mailed to 311 Ladue Drive, Mt. Carmel, IL 62863 (**WILLIAMS'** home).

### Civil IRS – RO Stephanie Meents

22. RO Stephanie Meents met **WILLIAMS** at his home (311 Ladue Drive, Mt. Carmel, IL 62863) on 3/17/2011 to discuss his income and have **WILLIAMS** sign and date his Form 1040.

a. **WILLIAMS** told RO Stephanie Meents that he would be working out of his home (311 Ladue Drive, Mt. Carmel, IL 62863) and that his income would be coming from his work as trustee on the S.F. Trust, EBay sales, and tax preparation.

b. **WILLIAMS** also stated that he will be keeping his EBay records at his house. RO Stephanie Meents observed several boxes and other items all over his house, 311 Ladue Drive, Mt. Carmel, IL 62863.

c. RO Stephanie Meents stated that **WILLIAMS** no longer has an office since he was fired from his job at Rhine Ernest, LLP.

d. **WILLIAMS** provided RO Stephanie Meents with his 2010 Form 1040, U.S. Individual Tax Return while she was at his house, 311 Ladue Drive, Mt. Carmel, IL 62863.

13

### Wabash County State's Attorney

23. Wabash County State's Attorney Cassandra A. Goldman was contacted by Rhine Ernest, LLP in reference to **WILLIAMS** and his tenure at their firm. Rhine Ernest fired **WILLIAMS** once they were notified that he was not honoring the wage levy the IRS had established on his income. Rhine Ernest reviewed all documents related to **WILLIAMS**, including his computer and determined **WILLIAMS** was submitting fraudulent reimbursement expenses to Rhine Ernest. **WILLIAMS** was submitting reimbursement expenses for conferences he never attended and for software that was never downloaded on their computers.

### Trash Run

24. On 9/21/2011 your affiant completed a trash run at **WILLIAMS'** home located at 311 Ladue Drive, Mt. Carmel, IL 62863. Items found in the trash are listed below:

   a. First Premier Bank Master Card Statement addressed to **WILLIAMS** at 311 Ladue Drive, Mt. Carmel, IL 62863.

   b. The First National Bank deposit receipt for the date 9/16/2011.

   c. First National Bank notice of loan payment addressed to Excalibur Development, Andrew Williams and **WILLIAMS** at 311 Ladue Drive, Mt. Carmel, IL 62863.

   d. ING Direct business savings account card issued to **WILLIAMS** at 311 Ladue Drive, Mt. Carmel, IL 62863.

   e. Three investment statements from Johnson & Johnson addressed to **WILLIAMS** and each one of his three children at 311 Ladue Drive, Mt. Carmel, IL 62863.

   f. Investment statements from IBM addressed to **WILLIAMS** at 311 Ladue Drive, Mt. Carmel, IL 62863.

g. Mailing from address 501 Brooker Creek Blvd, Oldsmar, FL 34677 mailed to TV Research Home at P.O. Box 1032, Mt. Carmel, IL 62863.

h. Email print out explaining how the football pool worked for NFL games each week, dated 9/7/2011.

### Location and Existence of Records

25. Based on the available evidence as of December 13, 2011, **WILLIAMS** is still living at 311 Ladue Drive, Mt. Carmel, IL 62863. Your affiant contacted First National Bank of Allendal's CFO Senior VP Tamara Mcfarland and she verified the following. **WILLIAMS'** personal bank account and Business bank account (Excalibur Development) are still active and have **WILLIAMS'** personal address (311 Ladue Drive, Mt. Carmel, IL) listed on the accounts. The Spond Family Trust Account is also still active. Tamara Mcfarland stated that in November there were two deposits, one for $17,500 and the second for $25,000 and some change. The account balance is being depleted by checks written to **WILLIAMS'** business and other similar transactions as explained above.

26. As of December of 2011, **WILLIAMS** is still depositing money from the Spond Family Trust Account at First National Bank into his business and personal accounts. According to records from First National Bank, **WILLIAMS** is using this money for personal expenses. For Example, **WILLIAM'S** business account in the name of Excalibur Development LLC had a balance of approximately $500 on November 17, 2011, and then from November 21 through December 9, approximately $12,000 was deposited from the Spond Family Trust account. The funds were then used by **WILLIAMS** for personal expenses, such as a $1,175.52 payment to Victoria National Golf Club on December 7, 2011. According to First National Bank, as of

January 6, 2012, **WILLIAMS'** monthly banking records for his personal and business account discussed above are mailed to his residence at 311 Ladue Drive.

27. Base upon your affiant's knowledge, training, and experience, including consultation with other agents who are experienced in the conduct of financial related investigations, I have reason to believe:

    a. That a person engaged in a trade or business maintains some or all of the following types of records: summary sheets/schedules showing periodic income and expense totals, purchase orders, invoices, sales receipts, employee information, payroll information, bank records, calendars, correspondence, notes, memoranda, phone records, client lists, computers and computer storage devices containing any and all of the above information.

    b. With respect to the federal violations relating to tax evasion, I know that:

        i. Individuals engaged in an income-producing activity, who wish to evade income tax on income earned by that activity, often keep a second set of books or keep records in a form of another media, such as on a computer, reflecting the true earnings of the business and individually, in order to comprehend their true wealth for future financing purposes of obtaining property such as homes and assets or to sell the business;

        ii. Individuals engaged in an income-producing activity, who wish to evade income tax on income earned by that activity, often possess copies, in some form, of books and records reflecting the true income of their activities in their business and home;

        iii. Individuals who commit tax offenses, often keep in their residence and business locations, certain financial records such as pay stubs, check registers, bank statements, credit card statements, and emails/notes pertaining to financial transactions;

        iv. Individuals who commit tax offenses, keep in their residence and business locations, calendars and address books, and personal notes pertaining to appointments and personal contacts;

        v. Individuals involved in financial and financially related crimes often maintain records and documents pertaining to their criminal activity. These records and documents are normally kept by these individuals in their residence, vehicles,

businesses, or on their person, where they may be readily accessible to that individual. Furthermore, these records are maintained for numerous years. Based on your affiants knowledge, residences typically contain financial records; and

c. For these reasons, as well as additional reasons stated below, I believe **WILLIAMS** has records relating to financial transactions, which are evidence of the alleged criminal offenses for the tax years 2008 through 2010, stored at **WILLIAMS'** home located at 311 Ladue Drive, Mt. Carmel, Wabash County, Illinois, 62863.

28. Based upon your affiant's knowledge, training, and experience, including consultation with other agents who are experienced in the conduct of financial related investigations, I have reason to believe that the use of both personal computers and personal digital assistants or personal data organizers, hereinafter "PDA's," have become pervasive in American Society. I know that personal computers and PDA's are often used to generate correspondence and email correspondence, as well as maintain address books, calendars, and other contact information. I know that personal financial software such as Quicken, Microsoft Money, or similar programs are often used to maintain personal and business financial records such as check registers and to record downloaded bank statements. It is also common for individuals to maintain both personal and business records (including records pertaining to criminal activity) via computer.

**Computer Searches**

29. Based on your affiant's knowledge, training, experience, and information relayed to me by agents and others involved in forensic examination of computers, I know that:

a. Computer hardware consists of all equipment which can collect, analyze, create, display, convert, store, conceal, or transmit electronic, digital, magnetic, optical or similar computer impulses or data. Hardware includes any data-processing devices (such as central processing units and self contained "laptop" or "notebook" computers or Personal

Digital Assistants -- PDAs); internal and peripheral storage devices (such as fixed disks, floppy disks, external hard disks, floppy disk drives and diskettes, tape drives and optical storage devices, thumb-drives, and other memory storage devices); peripheral input/output devices (such as keyboards, printers, scanners, plotters, video display monitors, and optical readers); and related communications devices (such as modems, cables and connections, recording equipment, speed dialers, programmable telephone dialing or signaling devices, and electronic tone-generating devices); as well as any devices, mechanisms, or parts, that can be used to restrict access to computer hardware (such as physical lock and keys).

b.  Computer software is digital information which can be interpreted by a computer and any of its related components to direct the way they work. Software is stored in electronic, magnetic, optical, or other digital form. It commonly includes programs to run operating systems, applications, utilities, compilers, interpreters, and communications programs.

c.  Computer-related documentation consists of written, recorded, printed, or electronically-stored material which explains or illustrates how to configure or use computer hardware, software, or other related items.

d.  Computer passwords and other data security devices are designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or programming codes. A password (which is a string of alpha-numeric characters) usually operates as a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software or digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when

18

touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

e. Computer hardware and computer software may be utilized to store information or data in the form of electronic, digital or magnetic coding on computer media or on media capable of being read by a computer or computer related equipment. This media includes, but is not limited to fixed hard drives and removable hard drive cartridges, laser disks, tapes, floppy disks, CD-ROMs, thumb-drives and any other media capable of storing magnetic coding.

30. Based on your affiant's knowledge, training, experience, and information relayed to me by agents and others involved in forensic examination of computers, I know that searching and seizing information from computers often requires agents to seize most or all electronic-storage devices, along with related peripherals, to be searched later by a qualified expert in a laboratory or other controlled environment for the following reasons.

a. The volume of evidence. Computer storage devices (like hard disks, diskettes, thumb-drives, tapes, laser disks) can store the equivalent of thousands of pages of information. Additionally, a suspect may try to conceal criminal evidence; he or she might store it in random order with deceptive file names. This may require searching authorities to examine all the stored data to determine which particular files are evidence or instrumentalities of crime. This sorting process can take weeks, depending on the volume of data stored, and it would be impractical to attempt this kind of data search on site.

b. <u>Technical requirements.</u>  Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment.  Data search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even "hidden," erased, compressed, password-protected, or encrypted files.  Since computer evidence is extremely vulnerable to inadvertent or intentional modification of destruction (both from external sources or from destructive code imbedded in the system as a "booby trap"), a controlled environment is essential to its complete and accurate analysis.

c. Searching computerized information for evidence or instrumentalities of crime commonly requires agents to seize most or all of a computer's input/output peripheral devices, related software, documentation, and data security devices (including passwords) so that a qualified computer expert can accurately retrieve the computer's data in a laboratory or other controlled environment.  This is true because of the following:

  – The peripheral devices which allow the users to enter or retrieve data from the storage devices vary widely in their compatibility with other hardware and software.  Many systems storage devices require particular input/output devices in order to read the data on the system.  It is important that the analyst be able to properly re-configure the computer as it now operates in order to accurately retrieve the evidence.

  – In addition, the analyst needs the relevant system software (operating systems, interfaces and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media),

20

as well as all related instruction manuals, or other documentation and data security devices.

31. In light of the concerns outlined above, your affiant hereby requests the Court's permission to seize the computer hardware and associated peripherals that are believed to contain some or all of the evidence described in the warrant and to conduct an offsite search of the hardware for the evidence described, if, upon arriving at the scene, the agents involved in forensic examination of computers conclude that it would be impractical to image or search the computer hardware on-site for this evidence. If such circumstances apply, the government will return the computer equipment within a reasonable amount of time.

## Affiant's Conclusion

32. Based on the forgoing, your affiant alleges there is probable cause to believe that on the premises described herein, there is presently concealed those items set forth in Attachment B, which constitutes evidence of violations of Title 26, United States Code, Sections 7201 (attempt to evade or defeat the assessment and payment of tax); and 7206(1) (fraud and false statements, declaration under penalties of perjury) occurring during the period 2008 through 2010.

FURTHER AFFIANT SAYETH NAUGHT.

_____

Rusty Riser

Special Agent, Internal Revenue Service

State of Illinois           )

                            )  SS.

County of St. Clair         )

        Sworn to before me, and subscribed in my presence on the 21st day of Feb , 2012, at East St. Louis, Illinois.

CLIFFORD J. PROUD

United States Magistrate Judge

STEPHEN R. WIGGINTON

United States Attorney

KATHERINE L. LEWIS

Assistant United States Attorney

**Attachment A**





THE ENTIRE PREMISE OF 311 LADUE DRIVE, MT. CARMEL, WABASH, COUNTY

ILLINOIS, DESCRIBED AS A SINGLE STORY U -SHAPED RESIDENCE COVERED

IN RED BRICK ON ALL SIX SIDES, THE RESIDENCE IS CONNECTED TO LADUE

DRIVE BY A PAVED DRIVEWAY WITH A MAIL BOX LOCATED AT THE EDGE

## Attachment B
## Items to be Seized

Property which constitutes evidence of the commission of a criminal offense or which is contraband, fruits of the crime, or things otherwise criminally possessed, or which is designed or intended for use or which is or has been used as the means of committing an offense impacting the tax years 2008 through 2010: of violation of Title 26, United States Code, Sections 7201 (attempt to evade or defeat tax) and 7206(1) (fraud and false statements, declaration under penalties of perjury).

A. **The hereinafter described property will be limited to personal property pertained to KEVIN WILLIAMS and/or the Spond Family Trust and/or        Spond and/or business-related property for the following entities: Excalibur Development, LLC and Bison Development, LLC, as follows:**

1.      Trust records, to include trust creation documents, tax returns (including drafts and unfiled copies), bank statements, account applications, signature cards, deposit items, cancelled checks, withdrawal items, cash withdrawals, checks to cash, wire transfers, cashier's checks, money orders, traveler's checks, bank checks, official checks, cash advance checks, passbooks, records of safety deposit boxes and keys, monthly statements, investment accounts, bank accounts, and the transfer, expenditure, and obtaining of money, credit card and debit card statements, brokerage account records, stocks and bonds, real estate, and commodities, loan applications and documents, lists of assets, monthly payment slips, receipts, notifications of payments received, mortgage applications and documents, credit checks, and amortization statements, credit card statements, credit card applications, trustee documents, beneficiary documents, grantor documents;

24

2.      Business accounting records, to include accounting ledgers, payment ledgers, general ledgers, ledgers of cash receipts and disbursements, accounts payable, accounts receivable, financial statements, notes, payroll disbursements, payroll federal tax withheld, payroll Social Security tax withheld, payroll Medicare tax withheld, all tax related information, and all other summaries and compilations of financial information;

3.      Business and personal financial institution records, to include account applications, signature cards, deposit items, cancelled checks, withdrawal items, cash withdrawals, checks to cash, wire transfers, cashier's checks, money orders, traveler's checks, bank checks, official checks, cash advance checks, passbooks, records of safety deposit boxes and keys, monthly statements, investment accounts, and the transfer, expenditure, and obtaining of money, credit card and debit card statements, brokerage account records, stocks and bonds, real estate, and commodities;

4.      Business and personal loan records, to include loan applications and documents, tax returns, lists of assets, monthly payment slips, receipts, notifications of payments received, mortgage applications and documents, credit checks, and amortization statements;

5.      All financial and investment records related to financial transactions, assets, or investments, including the following: credit card statements, debit card statements, financial institution records, mortgage documents, mortgage applications, credit checks, loan documents, loan applications, brokerage records, stocks, bonds, real estate and commodities;

6.       Books, records, receipts, bank statements and records, money drafts, letters of credit, money orders and cashier's checks, receipts, passbooks, bank checks and other items evidencing the obtaining, transfer and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money;

7.      Business and personal IRS forms and related documents, manuals, correspondence, and booklets, to include originals and copies of U.S. Individual Income Tax Returns and/or state tax returns and related documents;

8.      Business incorporation and licensing applications or documents;

9.      United States currency greater than $5,000;

10.     Telephone records, cellular phone, and other devices that save phone and/or address books, names, addresses, text messages, and phone numbers, emails and electronic data;

11.     Safes and other locked storage containers which are unable to be opened on premises;

12.     Indicia of ownership of the premises described above, to include: utility and telephone bills, trash removal statements and bills, cancelled envelopes, real estate tax statements, construction or improvement bills, materials purchase receipts, insurance documents, and safety deposit box keys;

13.     Papers, tickets, notes, receipts and other items relating to domestic and international travel;

14.     All of the foregoing items of evidence described in paragraphs 1-13 above, in whatever form and by whatever means such items may have been created or stored, including any hand-made form, any photographic form or any electrical, electronic, digital or magnetic form, such as any information on an electronic, digital or magnetic storage device like a floppy diskette, hard disk, backup media, CD-ROM, thumb-drive, optical disc, electronic dialer, electronic notebook, as well as printouts or readouts from any digital or magnetic storage device;

15.     Computer hardware, including data-processing devices (such as central processing units, desktop computers, self contained "laptop" or "notebook" computers, Personal Digital Assistants – PDAs, and Smart Phones); internal and peripheral storage devices (such as fixed disks, floppy

disks, external hard disks, floppy disk drives and diskettes, tape drives and optical storage devices, thumb-drives, and other memory storage devices); peripheral input/output devices (such as keyboards, printers, scanners, plotters, video display monitors, and optical readers); and related communications devices (such as modems, routers, cables and connections, recording equipment, speed dialers, programmable telephone dialing or signaling devices, and electronic tone-generating devices); as well as any devices, mechanisms, or parts, that can be used to restrict access to computer hardware (such as physical lock and keys);

16.     Computer software, including programs to run operating systems, applications, utilities, compilers, interpreters, video, web browsers, and communications programs;

17.     All computer-related documentation including written, recorded, printed, or electronically-stored material which explains or illustrates how to configure or use computer hardware, software, or other related items; and

18.     All computer passwords and data security devices, including encryption devices, chips and circuit boards.

**B. The hereinafter described property will be limited to personal property pertained to KEVIN WILLIAMS and/or the Spond Family Trust and/or** ▮▮▮▮▮▮▮▮ **Spond and/or business-related property, as follows:**

1.     Books, records, receipts, bank statements and records, money drafts, letters of credit, money orders and cashier's checks, receipts, passbooks, bank checks and other items pertaining to income and expenses.

2.     All of the foregoing items of evidence described in paragraph 1 above, in whatever form and by whatever means such items may have been created or stored, including any hand-made form, any photographic form or any electrical, electronic, digital or magnetic form, such as any

information on an electronic, digital or magnetic storage device like a floppy diskette, hard disk, backup media, CD-ROM, thumb-drive, optical disc, electronic dialer, electronic notebook, as well as printouts or readouts from any digital or magnetic storage device;

3.      Computer hardware, including data-processing devices (such as central processing units, desktop computers, self contained "laptop" or "notebook" computers, Personal Digital Assistants – PDAs, and Smart Phones); internal and peripheral storage devices (such as fixed disks, floppy disks, external hard disks, floppy disk drives and diskettes, tape drives and optical storage devices, thumb-drives, and other memory storage devices); peripheral input/output devices (such as keyboards, printers, scanners, plotters, video display monitors, and optical readers); and related communications devices (such as modems, routers, cables and connections, recording equipment, speed dialers, programmable telephone dialing or signaling devices, and electronic tone-generating devices); as well as any devices, mechanisms, or parts, that can be used to restrict access to computer hardware (such as physical lock and keys);

4.      Computer software, including programs to run operating systems, applications, utilities, compilers, interpreters, video, web browsers, and communications programs;

5.      All computer-related documentation including written, recorded, printed, or electronically-stored material which explains or illustrates how to configure or use computer hardware, software, or other related items; and

6.      All computer passwords and data security devices, including encryption devices, chips and circuit boards.